## S11A0767. ROGERS v. THE STATE.

(715 SE2d 68)

CARLEY, Presiding Justice.

After a jury trial, Appellant Caesar Octavious Rogers was found guilty of malice murder, burglary, possession of a firearm during commission of a felony, and possession of a firearm by a convicted felon. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for malice murder, a concurrent 20-year term for burglary, a five-year consecutive term for possession of a firearm during the commission of a felony, and a concurrent five-year term for possession of a firearm by a convicted felon. Appellant appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that on October 13, 2008, Appellant Caesar Octavious Rogers and others were watching a group of men play checkers. The victim, Clayton Bernard Carter, was also present and approached Appellant with the purpose of buying drugs. Appellant refused to make the sale because the victim had an unpaid debt for past drug purchases. A heated argument ensued between Appellant and the victim that lasted several minutes. The verbal altercation ended with the victim leaving the location to retrieve a .38 caliber revolver from his residence. The victim returned to the location with the revolver and fired it one or two times into the air. Appellant called someone on his cell phone and said to "bring that," and a witness who overheard the telephone call believed that Appellant meant to bring a gun.

Shortly after the above described altercation, the victim returned home and Appellant was observed approaching the victim's

---

[*] The crimes occurred on October 13, 2008, and the grand jury returned the indictment on November 9, 2009. The jury found Appellant guilty on March 3, 2010, and, on that same day, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on March 15, 2010, amended on December 6, 2010, and denied on December 13, 2010. Appellant filed the notice of appeal on January 7, 2011. The case was docketed in this Court for the April 2011 term and submitted for decision on the briefs.

residence with his hands concealed in his jacket. Appellant walked down the side of the victim's residence, peeked around, and then doubled back. Minutes later the victim's neighbor heard a gunshot coming from the vicinity of the victim's residence. Another neighbor witnessed Appellant run down an alley behind the residence and get into the back seat of a waiting car that drove away from the scene.

Mary Alice Rawls lived with the victim at the time of the shooting and returned home from work that day to find him shot dead and lying on the bedroom floor. She called 911. The victim was fatally shot in the neck. The bullet which killed him was recovered and was determined to be a .40 caliber projectile, a type of bullet that could not have been discharged from the revolver that the victim was seen carrying earlier in the day.

The evidence was sufficient for a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court rejected a timely written request by Appellant to charge the jury on unlawful act involuntary manslaughter as a lesser included offense of the crime of murder. Appellant contends on appeal that rejection of his requested instruction was reversible error.

> A person commits the offense of involuntary man-slaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony.

OCGA § 16-5-3 (a). According to an in-custody statement made by Appellant to police, he went to the victim's residence with the purpose of instigating a fist fight. He stated that he went around to the back of the residence, saw the victim through the bedroom window, and yelled for the victim to come out to fight. When the victim refused to come out of the house, according to Appellant, he grabbed a bucket to stand on and began punching the victim through the window. At this time, according to Appellant, the victim grabbed a gun, and, after a struggle for the gun, it accidentally fired, resulting in the bullet wound to the victim's neck that killed him.

In short, according to Appellant's statement, he went to the victim's residence with the intention of causing physical harm to the victim or placing the victim in reasonable apprehension of violent injury, which would constitute the offenses of simple battery or simple assault, both of which are classified as misdemeanors and thus each would qualify as "an unlawful act other than a felony" for

purposes of involuntary manslaughter. OCGA §§ 16-5-3 (a), 16-5-20 (a), 16-5-23 (a) (2). Appellant never admitted that he brought a gun, or any other kind of deadly weapon, which would raise the offenses to felony status. Compare *Finley v. State*, 286 Ga. 47, 49-50 (4) (b) (685 SE2d 258) (2009) (defendant was a convicted felon and admitted to possessing a gun, which constitutes a felony); *Smith v. State*, 264 Ga. 857, 858 (2) (452 SE2d 494) (1995) (defendant testified that "he brought the gun into the room [with the victim] with the specific intent of inducing fear of violent injury"). In fact, he asserted that the victim brandished the gun. Finally, he claimed that he went to the victim's residence for the sole purpose of instigating a fist fight, and that the victim was killed unintentionally by an accidental discharge of the victim's gun. Therefore, from Appellant's statement, the jury could have concluded that Appellant was guilty of involuntary manslaughter as opposed to intentional murder.

> "(A) written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense." [Cit.] . . . Although certainly subject to attack as weak, incomplete or self-serving, [Appellant's] statement to the [police] constitutes at least "any evidence that the defendant is guilty of the lesser included offense" which mandates giving the requested written charge, as such evidence would entitle a jury to believe his version.

*Edwards v. State*, 264 Ga. 131, 132 (442 SE2d 444) (1994). Moreover, there was some evidence consistent with Appellant's statement, including that a bucket was found under the bedroom window that was turned over as if someone used it to stand on, the bedroom window of the house was open and the screen had been damaged, and Appellant's cell phone was found on the ground under the window. Of course, there was also ample evidence that would cast doubt on Appellant's version of events. However, it is " 'for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence. (Cits.)' [Cit.]" *Vega v. State*, 285 Ga. 32 (1) (673 SE2d 223) (2009). Accordingly, it was error for the trial court to refuse Appellant's request to charge the jury on unlawful act involuntary manslaughter.

However, there was overwhelming evidence inconsistent with Appellant's version of events, but supportive of the jury's finding him guilty of malice murder, including the testimony by the crime scene specialist that there was no physical evidence to suggest that a struggle occurred at the window, the lack of blood near the window, a blood splatter analysis that signified that the victim was shot by

someone present in the bedroom at an angle that was not possible if the victim had been shot at the window, and the fact that a gun other than the murder weapon was found on the floor near the victim's hand, suggesting that Appellant brought with him to the victim's residence the gun used in the murder. Moreover,

> [t]he jury, by also finding [Appellant] guilty of malice murder, made an additional, specific finding that [Appellant] intended [the victim's] killing. In light of these circumstances, it is highly probable that the trial court's refusal to give a charge on [involuntary manslaughter] did not contribute to the verdict. [Cit.]

*Rhode v. State*, 274 Ga. 377, 382 (10) (c) (552 SE2d 855) (2001). See also *Braley v. State*, 276 Ga. 47, 53 (30) (572 SE2d 583) (2002); *Loren v. State*, 268 Ga. 792, 796 (3) (493 SE2d 175) (1997); *Edwards v. State*, supra at 133. Therefore, the trial court's erroneous failure to charge involuntary manslaughter as a lesser included offense was harmless.

3. Appellant also contends that the trial court erred by not excluding from evidence inculpatory statements made by Appellant to the police on the ground that they were not knowingly, intelligently, and voluntarily given. In order for the statements to be admitted, they "must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-3-50. " 'Generally, the "hope of benefit" to which the statute refers has been construed as a hope of lighter punishment. [Cits.]' [Cit.]" *Wilson v. State*, 285 Ga. 224, 227 (3) (675 SE2d 11) (2009). During an in-custody interview, Appellant was initially not responding fully to the questions posed, and one of the investigators told Appellant "you are not trying to help yourself." Appellant contends that his subsequent inculpatory statements were induced by this statement by the investigator, which Appellant took as a promise of a lighter sentence in return for his cooperation.

However, in *Lee v. State*, 270 Ga. 798, 800 (2) (514 SE2d 1) (1999), an appellant challenged the admission into evidence of an inculpatory statement that he made in response to an officer telling him to help himself out, and this Court held that the officer's comment was simply an encouragement to tell the truth, which does not amount to a "hope of benefit" under OCGA § 24-3-50.

> Exhortations to tell the truth are not a hope of benefit that renders a confession inadmissible under OCGA § 24-3-50. An interrogator's statement to an arrestee to "help yourself out" is an encouragement to tell the truth and does not

constitute an impermissible hope of benefit. [Cits.] Telling a suspect that truthful cooperation might be considered by others does not render a statement involuntary ([cit.]). . . .

*Wilson v. State*, supra at 228 (3). See also *Stringer v. State*, 285 Ga. 842, 845 (3) (684 SE2d 590) (2009); *Mangrum v. State*, 285 Ga. 676, 677-678 (2) (681 SE2d 130) (2009); *Pittman v. State*, 277 Ga. 475, 478 (2) (592 SE2d 72) (2004); *Gilliam v. State*, 268 Ga. 690, 692 (3) (492 SE2d 185) (1997). Therefore, this contention is without merit.
*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 12, 2011.

*Timothy L. Eidson*, for appellant.
*Denise D. Fachini, District Attorney, Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.